UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

WALTER J. S., JR.,          )
                            )
            *Plaintiff*     )
                            )
v.                          )   No. 1:18-cv-00295-JHR
                            )
ANDREW M. SAUL,             )
*Commissioner of Social Security,*[1] )
                            )
            *Defendant*     )

### *MEMORANDUM DECISION*[2]

This Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ failed to (i) find a severe cognitive disorder, (ii) properly evaluate whether his seizure disorder or cognitive disorder met or equaled any of the so-called "Listings," Appendix 1 to 20 C.F.R. Part 404, Subpart P, or (iii) properly assess his residual functional capacity ("RFC"). *See* Statement of Specific Errors ("Statement of Errors") (ECF No. 11) at 3-18. I agree that the ALJ erred in failing to find a severe cognitive disorder, and that the error was not harmless. On that

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the defendant in this matter.

[2] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 17.

1

basis, I vacate the commissioner's decision and remand this case for further proceedings consistent herewith. I need not and do not reach the plaintiff's additional points of error.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff had the severe impairments of status post surgery for brain tumor, seizure disorder, bipolar disorder/depression, anxiety, and post-traumatic stress disorder ("PTSD"), Finding 2, *id*. at 12; that he had no impairment or combination of impairments that met or medically equaled in severity any of the Listings, Finding 3, *id*. at 13; that he had the RFC to perform a full range of work at all exertional levels but could not climb ladders, ropes, or scaffolds, needed to avoid hazards such as moving machinery, unprotected heights, sharp objects, water or electrical hazards, and operation of hazardous machines including motor vehicles, and was capable of simple, unskilled work in a low-stress job involving only occasional decisionmaking, only occasional changes in the work setting, no contact with the public, only occasional contact with supervisors or coworkers, and no tandem tasks, Finding 5, *id*. at 15; that, considering his age (22 years old, defined as a younger individual, on the date his application was filed, June 26, 2015), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 6-9, *id*. at 24; and that he, therefore, had not been disabled from June 26, 2015, the date his application was filed, through the date of the decision, November 8, 2017, Finding 10, *id*. at 25. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Sec'y of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

The plaintiff alleges disability commencing on January 5, 2014, when he first experienced a seizure and fell from a roof while shoveling snow. *See* Record at 10, 50, 453. Diagnostic studies

revealed the existence of a brain tumor, which was surgically removed on February 12, 2014. *See id*. at 724, 726. Although the plaintiff continued to take prescribed anticonvulsant medication following his surgery, his seizures persisted, and he consulted a neurologist in August 2014. *See id*. at 493, 574-77. Despite ongoing treatment by his neurologist, the plaintiff continued to experience seizures through October 2015. *See id*. at 836.

In the wake of his surgery, the plaintiff also began to experience changes in mood and ability to function. *See id*. at 538-39, 574-75. He underwent a psychosocial evaluation in February 2015 and a psychological evaluation in April 2015, *see id*. at 538, 795, and was diagnosed with "bipolar and related disorder due to an associated medical condition, adjustment disorder with depressed mood, and generalized anxiety disorder" with an apparent "schizoid/schizotypal personality trait" and a possible diagnosis of PTSD, *id*. at 797.

Prior to the hearing, the ALJ also ordered a psychological consultative examination to include, *inter alia*, (i) administration of a WAIS-IV test, (ii) comment on any noted memory or neurological deficits, and (iii) a medical source statement ("MSS"). *See id*. at 937. Agency examining consultant A.J. Butler, Ed.D., conducted that evaluation on August 17, 2017. *See id*. at 937-43. She noted that, "[o]n the WAIS-IV, a general measure of intelligence, [the plaintiff] obtained a Verbal Comprehension Index of 83, a Perceptual Reasoning Index of 60, and a Full Scale IQ of 74[,]" with his full-scale IQ falling "within the borderline classification of intelligence significantly below adequate average development." *Id*. at 941. She added, "Analysis of [the plaintiff's] performance revealed that he experiences significant-to-severe cognitive processing difficulties." *Id*. She elaborated:

> There was a statistically significant atypical discrepancy between his Verbal Comprehension and Perceptual Reasoning Indexes of 23 standard score points, in favor of the former. The test results provided evidence of organicity, an underlying neurological impairment in the area of Perceptual Reasoning.

4

*Id*. She stated that she considered the test results to be valid. *See id*.

Dr. Butler diagnosed the plaintiff with cognitive disorder, NOS [not otherwise specified], as well as generalized anxiety disorder with panic attacks, bipolar disorder, and PTSD. *See id*. at 943. In the MSS section of her report, she stated, in relevant part:

> In regard to work-related activities, [the plaintiff] would be able to understand and remember tasks consistent with borderline intellectual ability. He would likely need enhanced verbal mediation and multiple repetition and reinforcement of verbal information in order to acquire, retain, and utilize it. Cognitively, he tends to reason concretely.

*Id*. In a standalone MSS form that Dr. Butler also completed, she checked a box indicating that the plaintiff had marked difficulty understanding and remembering simple instructions. *See id*. at 944-46.

The ALJ neither found a severe cognitive impairment nor explained why he did not. *See id*. at 12. He found a severe impairment of "status post surgery for brain tumor" in addition to "seizure disorder," but did not explain whether he meant it to include any cognitive disorder or what limitations, if any, he found it to impose. *Id*. Indeed, the commissioner does not dispute that the ALJ omitted to find a severe cognitive disorder. *See* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 15) at 2. However, he contends that substantial evidence supports that omission and, in any event, any error is harmless. *See id*. at 2-6. I find otherwise.

The commissioner correctly notes that "a diagnosis alone does not establish that an impairment is severe[,]" *id*. at 4 (citing *Brown v. Colvin*, No. 2:13-cv-473-JHR, 2015 WL 58396, at *2 (D. Me. Jan. 5, 2015), and that "'[a]n error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily

change the outcome of [his] claim[,]'" *id*. (quoting *Bolduc v. Astrue*, Civil No. 09-220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010)).

He contends that the plaintiff fails to show that Dr. Butler's diagnosis of a cognitive disorder would change the outcome of his case given that (i) her report "overlaps with earlier documented findings considered by" agency nonexamining consultants David R. Houston, Ph.D., and Brian Stahl, Ph.D., whose opinions the ALJ gave great weight, *id*. at 5, (ii) "[c]onsistent with Dr. Butler's diagnosis of a cognitive disorder, the ALJ acknowledged that Plaintiff had 'mild cognitive deficits' after his brain surgery, and considered such deficits when identifying Plaintiff's severe impairments at step two and, subsequently, when determining the RFC[,]" *id*. at 4, and (iii) the plaintiff fails to show that the Butler report establishes greater limitations than encapsulated in the ALJ's RFC determination, *see id*. at 5-6.

In support of the first point, the commissioner argues that, although Drs. Houston and Stahl did not have the benefit of review of the Butler report, which postdated their opinions, they considered the plaintiff's brain surgery and subsequent cognitive deficits, *see id*. at 2, and there were "significant similarities" between the records available to them and the Butler report, *id*. at 4. He observes, for example, that a February 2015 mental status examination indicated that the plaintiff's "thought process was not tangential or circumstantial, he could recall past and current presidents, and he could attend to his daily needs – just as Dr. Butler noted in August 2017." *Id*. (citations omitted).

However, while Dr. Butler's mental status examination yielded some results similar to those noted in the materials that Drs. Houston and Stahl had reviewed, *compare, e.g.*, Record at 541 *with id*. at 941, Dr. Butler also estimated that the plaintiff's short-term verbal memory functioning was within the borderline range and indicated that he had "observable attention and

6

concentration difficulties[,]" *id*. at 941.  Moreover, in relying on Drs. Houston and Stahl's review of materials pre-dating the Butler report, the commissioner minimizes the significance of the WAIS-IV testing that Dr. Butler performed.  As noted above, that testing revealed that the plaintiff's full-scale IQ score fell within the borderline classification of intelligence, "significantly below adequate average development[,]" and that "he experience[d] significant-to-severe cognitive processing difficulties."  *Id*.  The Butler report, hence, was not merely cumulative of the evidence that Drs. Houston and Stahl had reviewed.

In support of the second point, the commissioner observes that the ALJ acknowledged that the plaintiff "had 'mild cognitive deficits'" following his brain surgery.  Opposition at 4 (quoting Record at 19).  However, the ALJ focused in that passage on post-surgical findings of "initial slowness of general processing, and word-finding deficits, which improved with brief speech therapy[,]" noting that as of May 2014, primary care notes reflected "normal psychological status." Record at 19 (citations omitted).  This passage, thus, did not address Dr. Butler's findings predicated on WAIS-IV testing in August 2017.

Moreover, as the plaintiff argues, *see* Statement of Errors at 4-6, to the extent that the ALJ did directly address the Butler report, he seemingly misconstrued it.  While he did not indicate that he found the WAIS-IV scores invalid, he suggested that the two higher scores negated the lower one, *see* Record at 13-14.[3]  Dr. Butler, however, had explained that the "statistically significant atypical discrepancy between [the plaintiff's] Verbal Comprehension and Perceptual Reasoning Indexes of 23 standard score points . . . provided evidence of organicity, an underlying neurological

---

[3] In explaining his Step 3 finding that the plaintiff had a moderate limitation in understanding, remembering, or applying information, the ALJ stated that, while the plaintiff's WAIS-IV Perceptual Reasoning score "suggested weakness within his cognitive processing of information[,] . . . his scores on the Verbal Comprehension Index, and Processing Speed Index[,] were in the low average range, and his scores on the Working Memory Index were actually in the high average range." Record at 13 (citation omitted).  He made the same observation in support of his Step 3 finding that the plaintiff had a moderate limitation in concentrating, persisting, or maintaining pace, *see id*. at 14, and his Step 4 discussion of the Butler evidence, *see id*. at 21.

7

impairment in the area of Perceptual Reasoning." *Id*. at 941. The ALJ further suggested, in discussing the Butler report at Step 4, that the plaintiff had not established that he had a neurocognitive disorder, stating:

> In order to establish a neurocognitive disorder, the program requires medical documentation of a significant cognitive decline from a prior level of functioning. Although the record lacks documentation of previous cognitive functioning, the [plaintiff]'s neurosurgery records indicate [he] graduated from high school "with a push" and he had some problems with academic performance. Given the [plaintiff]'s own reports of lifelong learning disabilities and behavioral problems, one low score does not equal a cognitive decline.

*Id*. at 21 (citation omitted). However, as the plaintiff observes, *see* Statement of Errors at 5, the ALJ mistakenly applied the standard for establishing that a claimant's impairment meets or equals Listing 12.02 (neurocognitive disorder), *see* Listing 12.02. To demonstrate that he had a severe cognitive impairment, the plaintiff was required only to establish that he had a medically determinable impairment that had more than a minimal effect on his ability to work, *see, e.g.*, *McDonald*, 795 F.2d at 1124.

Finally, in support of the third point, the commissioner argues that the plaintiff fails to carry his burden of demonstrating prejudicial error. *See* Opposition at 4-6. That is not so. As the plaintiff observes, "Dr. Butler opined that [he] would have marked limitations in the ability to understand and remember simple instructions and make judgments on simple work-related decisions." Statement of Errors at 7; Record at 944. A "marked" limitation is defined as a "serious limitation[,]" with "a substantial loss in the ability to effectively function[.]" Record at 944. Accepted at face value, this opinion undermines the ALJ's reliance on the testimony of a vocational expert that a person capable, *inter alia*, "of simple, unskilled work" could perform the jobs on which the ALJ relied to meet the commissioner's Step 5 burden. *Id*. at 25, 102-03.[4]

---

[4] While the ALJ addressed the Butler MSS contained within the Butler report, which he accorded little weight, he did not address the standalone MSS in which Dr. Butler checked a box indicating that the plaintiff had marked limitation

8

Remand, accordingly, is required on the basis of this point of error.

## II. Conclusion

For the foregoing reasons, the commissioner's decision is **VACATED**, and the case is **REMANDED** for proceedings consistent herewith.

Dated this 25th day of August, 2019.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

in his ability to understand and remember simple instructions and make judgments on simple work-related decisions. *See* Record at 23-24, 944-46.